**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**October 23, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re*: **T.T., M.O., and E.C.**

**No. 17-0479** (Monroe County 16-JA-25, 16-JA-26, & 16-JA-27)

**MEMORANDUM DECISION**

Petitioner Mother J.C., by counsel R. Grady Ford, appeals the Circuit Court of Monroe County's April 24, 2017, order terminating her parental rights to T.T., M.O., and E.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Martha J. Fleshman, filed a response on behalf of the children in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in denying her motion for an improvement period and in terminating her parental rights, especially in regard to child E.C.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2016, the DHHR filed an abuse and neglect petition against petitioner. According to the petition, the DHHR received a referral alleging that eight-year-old M.O. was found roaming the Alderson, West Virginia, area dressed in leggings and a light sweatshirt despite the temperature being sixteen degrees with a wind-chill of zero degrees at the time. M.O. was picked up by a stranger and taken to the elementary school after speaking to officers at the Alderson Police Department. A Child Protective Services ("CPS") worker responded to the situation and spoke with petitioner, who reported that she thought the child had gone to school. The DHHR further noted that upon arriving at the home, the CPS worker observed that fifteen-year-old E.C. was at home, supposedly too sick to attend school. The CPS worker noted that E.C. did not appear to be ill. The CPS worker also described the home as unsanitary. The DHHR noted a history of referrals with petitioner being named in two prior abuse and neglect

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

proceedings. The first of the proceedings began in 2013, when allegations surfaced that petitioner did not respond to M.O.'s medical needs and smoked marijuana in the presence of the children. The second case began in 2015, due to educational neglect. At that time, E.C. had over thirty-nine unexcused absences and M.O. had forty-one absences, thirty-one of which were unexcused. The DHHR alleged that it provided petitioner services prior to the instant petition's filing due to inadequate supervision and inadequate physical care.

In January of 2017, the circuit court held an adjudicatory hearing during which it denied petitioner's motion for an improvement period. The DHHR presented multiple witnesses who testified as to the conditions of abuse and neglect in petitioner's home. Specifically, the circuit court heard the testimony of a CPS worker, who testified that he responded to petitioner's residence on the day that a stranger found M.O. wandering the streets unsupervised. The CPS worker testified that he found petitioner's residence to be unsanitary. He noted that E.C. was at home and did not appear to be sick. A supervisor with CPS also testified that E.C. was a truant at school. The supervisor stated that the DHHR had received ten to fifteen referrals surrounding petitioner since 2009 and that the common problem was lack of supervision and unsanitary accommodations. After considering the evidence and testimony presented, the circuit court adjudicated petitioner as an abusing parent. The matter was scheduled for a dispositional hearing.

The circuit court held a dispositional hearing in March of 2017. The DHHR presented multiple witnesses who testified as to petitioner's abuse and neglect. According to these witnesses, petitioner failed to correct the conditions of abuse and neglect over the course of several years, even when provided with services. A CPS worker testified that the DHHR received a total of fifteen referrals surrounding petitioner over the years. Services began in 2009 and were continued in 2011. When petitioner's first abuse and neglect case began in 2013, she was granted an improvement period which included adult life skills, drug screening, individualized parenting classes, agency transportation, interventional travel time, and supervised visits. The CPS worker stated that petitioner received "everything that the [DHHR] can provide." These services ceased upon completion of petitioner's improvement period but were reinstated in 2015 when the second proceeding began. The CPS worker testified that petitioner received these services throughout 2016, until the filing of the instant petition. The CPS worker testified that the prior proceedings dealt with allegations similar to the ones in the current proceedings, including lack of supervision, unsanitary conditions in the home, and educational neglect. Petitioner's service provider also testified regarding the services previously provided. The service provider testified that she worked with petitioner sporadically for approximately three years and that services were provided once a week. The service provider further testified that she had at least monthly contact with petitioner since 2013. Ultimately, the circuit court found that, despite services being provided for approximately seven years, petitioner had "shown no improvement and demonstrated a lack of insight into the impact her conduct has had on the children . . . ." Accordingly, the circuit court terminated her parental rights to the children.[2] It is from the dispositional order that petitioner appeals.

---

[2]The proceedings with regard to T.T.'s father are currently ongoing. T.T.'s permanency plan is for reunification with the father with the concurrent permanency plan being adoption by the current foster parents. Both fathers of M.O. and E.C. have had their parental rights terminated (continued . . . )

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

First, the Court finds no error in the circuit court's denial of petitioner's motion for an improvement period. We have often noted that the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re: M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) (holding that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period"); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) (holding that "[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements").We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period . . . .'"*In re: Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004). The record is clear that petitioner failed to demonstrate that she was likely to fully participate in an improvement period, as evidenced by her consistent failure to implement the services she already received.

At the dispositional hearing, the circuit court was presented with ample evidence of petitioner's lack of progress in the improvement periods granted to her in prior proceedings, as well as with services offered between her various circuit court actions. This evidence included testimony from the CPS worker who was assigned to her prior case in 2013 and supervised the case in 2015. The CPS worker testified that petitioner received a multitude of services, which amounted to "everything that the Department can provide." These services began in 2009 and were most recently provided after the second abuse and neglect proceedings commenced in 2015, continuing until the time the instant petition was filed in 2016.

---

in prior proceedings. The children remain in separate foster homes with a goal of adoption therein.

Thus, while petitioner argues on appeal that her successful completion of prior improvement periods warranted an additional improvement period, the Court finds nothing in the record to support this assertion. We have previously held that it is possible for a person to show "compliance with specific aspects of the case plan" while failing "to improve . . . [t]he overall attitude and approach to parenting." *W.Va. Dep't of Human Servs. v. Peggy F.*, 184 W. Va. 60, 64, 399 S.E.2d 460, 464 (1990). Fully participating in an improvement period necessarily requires implementing the parenting skills that are being taught through services. *In re M.M.*, 236 W. Va. at 115, 778 S.E.2d at 345. Contrary to petitioner's argument, the evidence overwhelmingly supports the circuit court's determination that petitioner "has shown no progress towards remediating the conditions in her home . . . ." Such determination is evidenced by the fact that petitioner continued to allow her children to roam the area unsupervised and failed to send them to school, issues specifically addressed in the prior proceedings. Petitioner's failure to implement concepts taught through the extensive services previously received demonstrated that she was unlikely to fully comply with an additional improvement period. For these reasons, we find no error in the circuit court's denial of petitioner's motion for an improvement period.

Second, petitioner argues that her parental rights should not have been terminated, particularly to E.C., without considering E.C.'s desires as she is over the age of fourteen. We find her argument without merit. As noted above, the circuit court specifically found that petitioner failed to demonstrate that she was likely to fully participate in an improvement period based on her continual failure to implement the services provided. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon findings that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected in the near future and when necessary for the children's welfare. A situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or *other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child*, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child . . . .

Id. § 49-4-604(c)(3)(2016) (emphasis added). Based upon the evidence outlined above, it is clear that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect. Despite several years of services designed to reduce or prevent abuse, petitioner's conduct remained the same and she showed no insight as to any of the concepts taught through her services.

Concerning petitioner's argument related to E.C., although West Virginia Code § 49-4-604(b)(6)(C) directs circuit courts to consider the desires of children ages fourteen and over, it does not mandate that courts agree with the child. Here, the guardian made E.C.'s wishes known in both her written report to the circuit court and on the record during the dispositional hearing. There is no indication that the circuit court failed to consider E.C.'s wishes when terminating petitioner's parental rights, which it ultimately determined was in her best interest. Finally, while

petitioner argues that less-restrictive alternatives to termination were available, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). As such, we find no error in the circuit court's termination of petitioner's parental rights.

Lastly, because the proceedings in circuit court regarding the father of T.T. are still ongoing, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under W.Va.Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the

child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 24, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  October 23, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker